# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RONNIE LYNN,

        Defendant.
_____/

CRIM CASE. NO. 2:25-cr-20200
HON. TERRENCE G. BERG

**Sentencing Memorandum
on behalf of Ronnie Lynn
(With Exhibits)**

## h u m · b l e

*adjective.*   1:   not proud or haughty: not arrogant or assertive . . .

        3a:   ranking low in a hierarchy or scale: insignificant, unpretentious

                -Merriam-Webster Dictionary

Ronnie Lynn is a man of humble beginnings. Born in 1955 in Phenix City, Alabama at the height of segregation, he resided with his brother, sister, and two parents who were braving the realities of life in the Frederick Douglass Homes:



1

(*See*, Picture of Frederick Douglass Housing Projects, Phenix City, AL)[1]; (Presentence Report [PPSR] at ¶ 34). Money was scarce: the family knew what it was like to go hungry or live for days in the dark. City life was also harsh: at that time, Phenix City was deemed corrupt and dangerous, nicknamed "the Wickedest City in America" due to rampant organized crime. *See* Sundi Rose, "*The 'Wickedest City in America is in GA's Backyard. Explore Phenix City's Chilling Past*" (Ledger-Enquirer, October 25, 2024).[2]

With this quality of life being standard for the town's white residents, one can only imagine the difficulties awaiting blacks. It was just a six-hour drive, for example, from Ronnie's home to the city of Money, Mississippi where Emmitt Till was murdered just four months after Ronnie was born. The injustices were clear to Ronnie's parents. So, like millions before them, they chose to move their family north, escaping the poverty and terror of life in the segregated south. (PSR ¶¶ 34-35).

At 18, Ronnie began charting his own path and enlisted in the United States Army shortly after finishing high school (PSR at ¶ 57):

[DD Form 257A excerpt showing: Character of Service: UNDER HONORABLE CONDITIONS; "A" Co 2/63 Armor 1st Inf Div, Fort Riley, Kansas – FORSCOM; Detroit, Michigan 48226; 31M20 14 Nov 74 Rad Relay & Carr Attn, 823.281 Radio Mechanic; 11E20 24 Jan 75 Armor Crewman; 0 da; 5 da; X $20,000; Secondary/High School 12 yrs; NATIONAL DEFENSE SERVICE MEDAL, MARKSMAN (M-16 RIFLE)]

---

[1] https://www.ledger-enquirer.com/news/local/article218143765.html
[2] https://www.ledger-enquirer.com/living/living-here-guide/article294477969.html

2

And while he earned skills and served the country honorably, Ronnie quickly discovered that life outside of the military was a better fit for him. He returned to the civilian work force and began a long career that included stints with the Internal Revenue Service, the United States Postal Service, and Ford Motor Company. (PSR ¶¶ 55-59). Ronnie was steady and worked with diligence in each role, earning enough to support his family and maintain a modest quality of life.

Of course there were struggles. In 1994, he broke trust with his family and accepted a 90-day sentence for sexually touching his teenaged step-daughter. (PSR ¶ 29). That tore the family apart and landed Ronnie not only in jail, but on Michigan the Sex Offender Registry for 25 years. *Id.* It was a painful chapter that Ronnie deeply regrets. He did what he could to move forward, which for him meant getting back to work, equipping himself with additional skills, and returning to a simple life.

It was at the sunset of his career that Ronnie found himself entangled in the conduct that brings him before this Court. Ronnie had been caring for his elderly mother, who was suddenly and unexpectedly diagnosed with a fatal form of cancer in May of 2012. Medical records reveal that she presented to the emergency room with severe abdominal pain that had not previously been detected by her primary care doctor. And though she was admitted on May 8, 2012, she was discharged to hospice just nine days later:[3]

---

[3] Medical Records, Submitted Under Separate Cover.

**DMC** DETROIT MEDICAL CENTER

Facility: Sinai-Grace Hospital
Address: 6071 West Outer Drive
Detroit, MI 48235

Patient Name: VANBUREN, WILLIE

Admit Date: 5/8/2012
Discharge Date: 5/17/2012
Medical Service: Family Practice

PCP: BAUL MD, TERRY S
Attending: BAUL MD, TERRY S

**Discharge Summary**

diabetes mellitus, history of glaucoma, blindness of her right eye secondary trauma during childhood, and also history of urinary incontinence. The patient's son contacted the EMS as the patient was suffering from abdominal pain and it was difficult for him to transfer her into a wheelchair. Prior to this admission, the patient was also admitted in Harper Hospital where she was able to walk on her own. Many investigations were done in Harper Hospital as patient had a mass in her liver on MRI of the abdomen in April 20, 2012. EGD, colonoscopy, and biopsies were also done. When the patient was admitted here, initially it was said that she was admitted for altered mental status but when I went to the patient's room, the patient's son said that this is her baseline. She is awake and she is alert, but she is not oriented to place and she talks very softly. This is her baseline and the son did not feel that mother has any altered mental status. After that, we checked the records in the pathology report of her liver biopsy, ultrasound guided liver biopsy revealed a poorly differentiated carcinoma. I went to the patient's room and along with me Dr. Peter Lopez, surgeon, was there. Dr. Lopez explained in my presence the details of the patient's diagnosis to the patient's son and he answered all his questions. Later our Heme/Oncology Tosan Fregene was consulted as he has been seeing the patient. Dr. Vinod Goyal saw from Nephrology. As per the attending's permission, Dr. Prince Eubanks was consulted who installed a PEG tube in the patient and she was started on feeds via her PEG tube also. The patient's diagnosis was discussed in detail with the patient's family by Heme/Oncology, by the attending, by myself, and surgeon. Initially, the family was not ready as to make the decision regarding the patient's transfer to a long-term facility versus nursing home versus palliative care versus Hospice care. The son, Ronnie, was discussing with his sister. As his sister is not in the same state, it was taking some time for the family to come to a decision regarding the mom's care initially. Social worker, Ms. Jessica, was involved along with case manager Ms. Connie also. Finally it was said to me by social work yesterday that the patient's family is agreeing for hospice and would like to discuss more before they make the final decision. All the paperwork was ready and in the chart and in the night yesterday, the on-call intern, Dr. Mohammad Sheikh was called. I talked with Dr. Mohammad Sheikh and he said that he was called and said by the R.N. that the patient has been accepted in Seasons Hospice. The intern discharged the patient to Seasons Hospice. All detailed medications were in the chart. Dr. Terry Baul called me yesterday evening and I discussed about the patient in detail and I did tell Dr. Terry Baul regarding the patient's family's concerns. As I have been trying to contact him from the past 3 days, I told him that I wanted to discuss the diagnosis with him and also wanted to know his plan and what he spoke with the family. As per Dr. Terry Baul, he said he would take care of the issues further with the family and would decide with them regarding the patient's transfer. Finally, the patient was transferred at the night to Seasons Hospice.

Ronnie was both shocked and devastated by the rapid turn of events. The grief consumed him initially, and handling her business matters were the least of his

4

concerns. Regrettably, however, Ronnie **never** took the appropriate steps to tell the bank about his mom's death, notify Social Security, or close their joint bank account. He knew then and knows now that this was wrong. He made a repeated decision to collect benefits to which he was not legally entitled. This dishonors both him and his mother and Ronnie is deeply ashamed for the predicament he has caused.

If you ask, Ronnie will tell you that he made this choice because he needed the money. The income played a huge role in helping Ronnie survive without struggling; his life's work earned him the right to receive a small pension, but it totals about $800 per month. (PSR ¶¶ 40). This barely covered his material needs. At bottom, this crime can best be understood as borne of necessity.

It is clear that Ronnie did not get rich or finance a lavish lifestyle on his mother's benefits. Quite the opposite, he used the proceeds to pay his bills and maintain a simple quality of life – one that mirrored his humble origins. While no excuse, counsel offers the explanation to help the Court see into the mind of the man who comes before it for sentencing.

*   *   *   *   *

For three reasons, we respectfully ask the Court to vary downward from the advisory guideline range of 6-12 months and sentence Ronnie Lynn to time served **with two years of supervised release**. Here's why this penalty would be sufficient, but not greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

*First,* while the 6-12 month guideline range is correctly stated, a sentence within

that range would be greater than necessary to punish Ronnie for his offense, given his background and characteristics. Despite his past, Ronnie has been able to recover, stay employed, and maintain healthy and stable adult romantic relationships. He has been with his significant other, Noelle Oliver, for more than ten years and they are expecting a child in a few months. (PSR at ¶ 39). He also enjoys a close relationship with his biological daughter Gina, who continues to support him notwithstanding his legal troubles. (*See generally, Support Letters, Exhibit 1*]. A custodial sentence would disrupt these pro-social bonds needlessly, and undermine the likelihood that Ronnie can return to the work force and begin to earn money to repay his restitution obligations and make the government whole for its losses.

The ability to repay restitution was a relevant factor for the courts in affirming a probationary sentence in *United States v. Menyweather*, 431 F.3d 692, 702 (9th Cir. 2005), where the defendant embezzled $435,918 from the Los Angeles United States Attorney's office. The Ninth Circuit upheld the district court's decision to impose probation in part because "a sentence of probation may have made defendant better able to provide restitution to the victims, see 18 U.S.C. §3553(a)(7)." *See also United States v. Coleman*, 370 F. Supp. 2d 661, 681 (S.D. Ohio2005) ("five years of probation, as opposed to one year of imprisonment or imprisonment with supervised release, will afford Defendants more time to pay restitution. 18 U.S.C. § 3553(a)(7)"); *United States v. Peterson*, 363 F. Supp. 2d 1060, 1062-63 (E.D. Wis. 2005) (defendant, a gambling addict in counseling, pled guilty to defrauding bank of $80,000; Guidelines range was 12-to-18 months; court imposed one day in prison and 5 year supervised release term in part so

6

defendant would not lose job and could pay restitution); *United States v. Blackburn*, 105 F.Supp. 2d 1067, 1069 (D.S.D. 2000) (where defendant pled guilty to failure to pay child support and Guidelines called for 12-to-18 months, court departed to probation to ensure defendant would be subject to longer term of supervision, finding imprisonment counterproductive towards payment of child support). Because it is Ronnie's intention to repay his restitution debt and make the Social Security Administration whole for the losses he has caused, the defense asks the Court to impose a below-guidelines, non-custodial sentence as being sufficient, but not greater than necessary to accomplish the purposes of § 3553(a).

*Second,* counsel believes a variance is warranted based on the fundamentally flawed nature of the fraud guidelines. As the Court knows, the fraud guideline has been subject to rampant criticism by sentencing judges, particularly those in districts where the financial industries concentrate. This is because, in part, loss amount is a highly imperfect measure of the seriousness of the offense. *See, e.g., United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D. N.Y. 2006) (criticizing "the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss" without any explanation of "why it is appropriate to accord such huge weight to [this] factor[ ]"). The amount of loss is often "a relatively weak indicator of [ ] moral seriousness . . . or the need for deterrence."). Nationally, in fiscal year 2022, sentences below-the-Guidelines were imposed in nearly 40% of cases governed by the 2B1.1 guideline. *See* U.S.S.C., 2022 QUICK FACTS ON THEFT, PROPERTY DESTRUCTION, AND FRAUD OFFENSES. When combined with Ronnie's personal history and characteristics, it

7

becomes evident that a below-guidelines sentence would avoid unwarranted disparities and be sufficient but not greater than necessary to punish him for his crimes, as required by 18 U.S.C. § 3553(a).

*Lastly,* the defense requests a non-custodial sentence because the likelihood of recidivism here is low. Sentencing Commission research suggests that once sentenced, Ronnie is statistically unlikely to re-offend because:

a) He is 70 years of age. *See U.S. Sentencing Commission Report, Older Offenders in the Federal System* at 42-43 (July 2022) (indicating that as a person's age at sentencing increased, recidivism rates decreased; and also noting that the recidivism rates of older offenders was less than half that of younger people);

b) He is being sentenced under the fraud guidelines. *Id.* at page 20, Figure 8 and Appendix A-1 *Rearrest Rates Across Selected Variables – Offense Level and Offense Type* (both demonstrating that individuals sentenced under the fraud guidelines are the least likely of all other offenders to be rearrested).

c) He has no recent criminal history. *Id.* at Appendix A-3 *Reincarceration Rates Across Selected Variables – Criminal History* (noting that 14% of individuals in CHC I are reincarcerated).

On that last issue, the Commission found that "an offender's total criminal history points, as determined under Chapter Four of the Commission's *Guidelines Manual,* were closely correlated with recidivism rates." *Id.* at 27. The report indicated that "each additional criminal history point is generally associated with a greater likelihood of recidivism," such that a person like Ronnie with zero criminal history points is amongst the least likely to find himself re-involved in criminal conduct. *Id* at 18. In sum, the Court can be assured that for Ronnie Lynn, criminal conduct is very unlikely to recur.

8

## Conclusion

In sum, a below-guidelines, non-custodial sentence would not be akin to allowing Ronnie Lynn to "get off lightly" for his offense. Rather, he would remain under Court supervision for several years, will have to pay restitution, and of course will lose his ability to collect Social Security benefits, which renders him financially vulnerable.

The defense believes the alternative – a term of incarceration – would be counterproductive.  Having never spent any substantial amount of time in prison, incarcerating Ronnie will disrupt his post-offense rehabilitation and economic productivity, send him far away from his close-knit family, and limit his access to the care he will need as an aging person in the community.

To be clear, Ronnie knows there are consequences for his wrongdoing, and that he has no one else to blame for whatever lot the Court ultimately requires him to bear. That said, he respectfully submits that a below-guidelines sentence is appropriate and will give him the best chance to work, reimburse the government for its losses, and maintain the self-discipline that has been key to his ability to remain an emotionally stable, sober, crime-free and productive member of society.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Brandy Y. Robinson
Attorney for Ronnie Lynn
613 Abbott, 5th Floor
Detroit, MI 48226
Phone: (313) 967-5834

Dated:  September 23, 2025

## **CERTIFICATE OF SERVICE**

On September 23, 2025, I served a copy of the foregoing document to counsel for the government, Corinne Lambert by way of electronic mail.

s/Brandy Robinson
Attorney for Ronnie Lynn

# Exhibit 1 – Support Letters

Your Honor,

My name is Mary A. Lynn-Hall. I am a first-grade teacher serving the community of EastPointe, Michigan. I have been an educator for over thirty years. I hold a master's degree in Early Childhood Education. I am a member of the International Honor Society in Education, Kappa Delta PI, and the Honor Society.

Ronnie G. Lynn is my brother. The same parents raised us within the same household. I have known Ronnie all my life. He is my youngest brother. My parents valued education, as we spent most of our years in a Christian school.

Three years ago, I was homeless and needed a place to live. My brother offered and moved me into his house on Margaretta St. in Detroit. He checked on me almost daily to see if I was well and cut my grass. My brother is kind and helpful whenever a family member needs support. My adult son was sick for one year. Ronnie came to the rescue, helped him around, and drove him to different doctors while taking him to business places. Also, he supported my grandson by taking him to work and back. Once, when I was in the hospital, Ronnie helped me by driving to get my medicine and supplies. He helped take care of me for over a month. My brother has supported many other family members, and I have seen him help homeless people on the streets by giving them food or money. When I lived in North Carolina, he helped and took care of my mother when she was severely ill.

Yes, I am aware that Ronnie pleaded guilty to his current situation. I found it very hard to believe! Ronnie has given nice clothes to the homeless and large bags of bottles to people who live on the street. I know my brother; he has the potential to be a positive member of society. I will always support him in his positive endeavors in life. I love my brother.

Respectfully

*Mary A. Lynn-Hall*

Mary A. Lynn-Hall

23805 Teppert Ave

Eastpointe, Michigan 48021            phone: 734-404-4099

Your Honor,

    My name is Noelle Oliver. I've been a manager at Nicky D's Coney Island (W 8 Mile and Evergreen) for over 7 years. I am a pillar in our community. I have several certifications in emergency medical technology.

Ronnie is my significant other. I have known Ronnie for more than 15 years, and been in a relationship with him for 10 years. I'm currently carrying his second child.

Ronnie is a kind hearted, humble person and he is an excellent role model for my two sons 15 and 12 for the past 15 years. Ronnie takes my kids to school, practices, and gigs for my oldest because he is a social media influencer. Whilst teaching him how to drive. Ronnie helps me take care of my mom who recently had an appendectomy. Ronnie takes me to get her medicine, pulls her garbage can to and from, and cuts her grass. Also, Ronnie helps the homeless by giving food, bags of bottles and giving money when he can. Ronnie also helps his family whenever they are in need without a second thought.

Although I am fully aware of the fact Ronnie pleaded guilty. Which was hard to believe. Ronnie is such a good, humble person who stays to himself and bothers no one. Ronnie is a positive person that today's society needs. Someone who cares about his community and the habitants.

In conclusion, I know Ronnie is and will continue to be a positive and productive member of society with my full support and backing always because his character and integrity is beyond words and measure and I will love him forever.

Respectfully

Noelle Oliver

16711 Beaverland St.

Detroit, Mi 48219

Lamond Lynn

17725 Sprenger

Eastpointe, MI 48021

May 6, 2025

The Honorable Terrence G. Berg

United States District Court Judge

231 W. Lafayette Blvd., Courtroom 700

Detroit, MI 48226

RE: Character Reference for Ronnie Lynn

Dear Judge Berg,

My name is Lamond Lynn, and I am the nephew of Ronnie Lynn. I am writing to respectfully offer a character reference on his behalf as he approaches sentencing in your court.

Ronnie has been more than just an uncle to me—he has played the role of a father figure throughout my life. He has guided me with wisdom, supported me in difficult times, and encouraged me to be the best version of myself. Ronnie was the one who gave me my first vehicle and personally taught me how to drive. These acts may seem simple, but they reflect the depth of his character and his commitment to helping those he loves.

Ronnie has always modeled responsibility, integrity, and compassion. His influence on me and others in our family has been lasting and profound. I know firsthand the positive impact he can have on people, and I truly believe he still has so much to offer to those around him and to our community.

Thank you for taking the time to consider this letter. I hope that my words offer some perspective on the kind of man Ronnie is.

Respectfully,

*Lamond Lynn*

Honorable Terrence G. Berg
United States District Court Judge
231 W. Lafayette Blvd., Courtroom 709
Detroit, MI 48226

Dear Judge Berg:

My name is Genna Todd. I am currently employed at Col Mac industries in Wayne Michigan as a production supervisor. I am a mother, wife, and daughter that is devoted to my family. Ronnie Lynn is my father and he is a huge part of my life. Ronnie is who I go to for advice he is who I reach out to on my good and bad days for a supportive ear. Ronnie is the most consistent, supportive, loving person in my life and has been that for my 37 years of living.

I have always been emotional and a overthinker Ronnie has help me find balance time and time again. I remember the summer before I started 9th grade and our multiple conversations he helped me reaffirm my worth and gave me the strength to face my first day. Ronnie was also one of the first people to show up to the hospital in 2005 when my son/his grandson and he showed out for every part of his grandson's life. Ronnie also walked be down the aisle in 2012. My father has been around for every minor and major part of my life.

I am aware of Ronnie's charges and that he has pled gulity. Ronnie is a very important part of his family and communites life. Ronnie has always

given his time, love and anything else he could give to be of support to people he loves. As his daughter I am praying that these truths will be taken into consideration when it comes to sentencing him. I love ronnie and will be here to support him through it all.

Respectfully, Genna Todd

Genna Todd
21360 Wallace Drive
Southfield MI 48075

Phone number (313) 443-1631